2000 ND 82

**Kristine K. LAUER, Plaintiff and Appellee,**

v.

**Mark A. LAUER, Defendant and Appellant.**

No. 990314.

Supreme Court of North Dakota.

April 25, 2000.

Theresa L. Zimmerman, American Legal Services, Bismarck, N.D., for plaintiff and appellee.

Loren C. McCray, Alexander & Solem Law Office, Beulah, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mark Lauer appealed from a post-divorce judgment denying his request to reduce child support and awarding attorney fees to Kristine Lauer for contempt proceedings brought by her against Mark. We affirm the award of attorney fees but reverse the child support award and remand for a redetermination of Mark's child support obligation in accordance with the child support guidelines.

[¶ 2] Mark and Kristine Lauer were divorced in 1991. Kristine was awarded custody of their two children and Mark was ordered to pay child support of $1,005 per month. In 1999, Kristine filed a motion asking the court to hold Mark in contempt for failing to pay child support and for failing to abide by other parts of the divorce decree. Mark filed a motion requesting a reduction in child support. The trial court, after hearing, found Mark in contempt for failing to pay support and ordered him to pay arrearages. The court also denied Mark's motion for reduction of child support and awarded attorney fees to Kristine for the contempt proceedings.

## I. CHILD SUPPORT

[¶ 3] Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discre-

tion standard of review. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. *Id.* As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support. *Id.* at ¶ 12. The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. *Richter v. Houser*, 1999 ND 147, ¶ 3, 598 N.W.2d 193. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id.*

[¶ 4] In denying Mark's motion for a reduction in child support, the trial court found, "[t]here is no substantial change in circumstances justifying a reduction in the obligation, except circumstances created by [Mark]." Under N.D.C.C. § 14-09-08.4(4), when a motion to amend child support is brought at least one year after entry of the order sought to be amended, "the court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines ... whether or not a material change of circumstances has taken place, unless the presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted." This statutory scheme envisions periodic review of child support orders to insure support is at all times consistent with the current guidelines amount. *Zarrett v. Zarrett*, 1998 ND 49, ¶ 8, 574 N.W.2d 855. An obligor must demonstrate a material change in circumstances only if the motion seeking modification of a child support order is brought within one year after its entry. *Nelson v. Nelson*, 547 N.W.2d 741, 744 (N.D.1996). When the obligor seeks modification of the support order after one year, as in this case, the trial court must modify the obligation to conform to the child support guidelines. *Id.* We hold the trial court erred in applying a change of circumstances standard to Mark's motion in this case.

[¶ 5] In support of his motion, Mark introduced income tax returns showing his current income is substantially less than it was when the original support award was computed under the guidelines. Averaging his annual income from those tax returns, Mark computed a support obligation of $526 per month. Kristine asserted Mark is underemployed, and she filed a post-hearing brief computing Mark's support obligation under the guidelines to be $638 per month. However, she requested the court to continue the original $1,005 per month support obligation because Mark failed to provide W-2 forms showing his actual income.

[¶ 6] Under N.D. Admin. Code § 75-02-04.1-02(7), "[i]ncome must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income." There is no record evidence demonstrating the tax returns introduced by Mark fail to reflect his actual income. Kristine's argument that Mark's failure to provide W-2 forms should preclude the court from redetermining Mark's actual support obligation in accordance with the guidelines is without merit.

[¶ 7] In continuing the original support obligation, the court apparently imputed additional income to Mark. Under N.D. Admin. Code § 75-02-04.1-07, the court may impute income based upon earning capacity when the court finds an obligor is underemployed. The guidelines define an underemployed obligor as one whose "gross income from earnings is significantly less than prevailing amounts earned in the community by persons with similar work history and occupational qualifications." N.D. Admin. Code § 75-02-

04.1–07(1)(b). The trial court made no finding that Mark is underemployed for purposes of applying this guideline provision. Furthermore, the trial court made no finding about the prevailing wages of persons with similar work history and occupational qualifications. Absent adequate evidence of the obligor's gross income from earnings and of the prevailing amounts earned in the community as a comparison to those earnings, the court cannot find an obligor is underemployed for purposes of imputing income under the guidelines. *Nelson*, 547 N.W.2d at 746–47.

 [¶ 8] This Court has recognized the North Dakota Labor Market Advisor, published by Job Service North Dakota, as a judicially noticeable publication for determining whether an obligor is underemployed. *Kjos v. Brandenburger*, 552 N.W.2d 63, 66 (N.D.1996). In her post-trial brief to the court, Kristine cites the Job Service North Dakota wage survey showing the mean wage for welders, Mark's profession at the time of the divorce, is $12.50 per hour. Considering a full-time welder practices his tradé for 2,080 hours per year at $12.50 per hour his annual wage would equal $26,000. Mark's income tax statements show his average annual income for 1996 and 1997 was $27,484.50. Using these numbers as submitted to the trial court, Mark is not presumed by the guidelines to be underemployed. N.D. Admin. Code § 75–02–04.1–07(2).

 [¶ 9] Kristine argues the court was authorized under N.D. Admin. Code § 75–02–04.1–07(9) to impute income to Mark without a showing that Mark is unemployed or underemployed. That guideline subsection provides:

> Notwithstanding subsections 4, 5, and 6, if an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before

commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.

The district court's findings under the imputed income provisions of the child support guidelines must be clear, and we must know how the court arrived at the amount of income and level of support. *Buchholz*, 1999 ND 36, ¶ 16, 590 N.W.2d 215. The trial court made no finding that Mark voluntarily quit the job he had when the original support award was computed. Furthermore, the trial court did not show how computation of imputed income to Mark under this subsection of the guidelines would result in a support obligation of $1,005 per month. Rather, it appears the court merely relied on its holding there was no change of circumstances to support its order of $1,005 per month.

[¶ 10] We conclude the trial court erred, as a matter of law, in failing to apply the guidelines for determining Mark's current child support obligation. Therefore, we hold the trial court's finding that Mark's child support obligation is $1,005 per month is clearly erroneous and must be recomputed in accordance with the guideline requirements.

## II. ATTORNEY FEES

 [¶ 11] The trial court ordered Mark to pay Kristine "attorney's fees actually incurred in bringing and presenting the Motions." Kristine requested the court to hold Mark in contempt for failing to abide by the original divorce decree. The court found Mark in contempt and ordered him to pay arrearages for past due child support and to comply with other provisions of the decree. As a sanction for contempt, N.D.C.C. § 27–10–01.4 provides, in part:

> 1. A court may impose one or more of the following remedial sanctions:

a. Payment of a sum of money sufficient to compensate a party or complainant, other than the court, for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt.

The court, in its discretion, may award attorney fees as part of the compensation to the complainant in contempt proceedings as reimbursement for costs and expenses incurred as a result of the contempt. *Nygard v. Nygard*, 503 N.W.2d 848 (N.D.1993); *see also Fargo Women's Health Organization . v. Larson*, 391 N.W.2d 627, 635 (N.D.1986). We find no abuse of discretion in awarding attorney fees on this record.

[¶ 12] We affirm the judgment except for that part denying Mark's motion to amend his child support obligation, and we remand for a redetermination of child support in accordance with the child support guidelines.

[¶ 13] Affirmed in part, reversed in part, and remanded.

[¶ 14] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.