Filed 1/31/06 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2006 ND 16

Leon Hewson, Plaintiff and Appellant

v.

Joselyn A. Hewson, 

n/k/a Joselyn A. Privratsky, Defendant and Appellee

No. 20050218

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Ronald L. Hilden, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Maring, Justice.

Rhonda R. Ehlis of Hardy, Maus & Nordsven, P.C., P.O. Box 570, Dickinson, N.D. 58602-0570, for plaintiff and appellant.

Todd A. Schwarz of Schwarz Law Office, Parkade Bldg., 2
nd
 Floor, 515 ½ E. Broadway, Ste. 103, Bismarck, N.D. 58501, for defendant and appellee.

Hewson v. Hewson

No. 20050218

Maring, Justice.

[¶1] Leon Hewson appeals from the trial court’s amended judgment concluding he owes Joselyn Privratsky, formerly Joselyn Hewson, $17,852 to correct an unequal asset distribution resulting from the parties' 1991 divorce.  We conclude the trial court  failed to clearly state the determined amount was a credit to Privratsky for any child support she may owe Hewson.  We further conclude the trial court failed to make specific findings of how it arrived at the $17,852 figure.  We, therefore, reverse and remand.

I

[¶2] The parties were divorced on July 22, 1991.  Under the terms of the parties’ settlement agreement incorporated into the divorce judgment, Hewson received custody of the parties’ minor children.  The parties agreed that Hewson would keep the majority of the marital assets to provide the children with support and he would be solely responsible for the children's support due to Privratsky's inability to afford more than $10 per child per month in support.  The judgment stated that the agreement was contractual in nature and was not subject to modification by the parties or by any court.  The judgment also stated that Hewson had agreed to indemnify Privratsky and hold her harmless for any future child support claims.  

[¶3] In 1995, Hewson commenced an action through the Southwest Area Child Support Enforcement Unit, and the parties entered into a stipulation for Privratsky to pay child support of $126 per child per month.  This stipulation was incorporated into an amended judgment.  In 2003, Hewson requested a review of Privratsky's child support obligation.  The Southwest Area Child Support Enforcement Unit moved to increase Privratsky's child support obligation.  Privratsky objected, arguing that she had given up marital property in lieu of payment of child support.  On February 3, 2004, after several continuances and a hearing, the trial court ordered that the value of the forfeited property be calculated and then used to offset a calculation of the amount of child support owed from the time of the divorce.

[¶4] In April 2004, Social Services removed the children from Hewson’s care.  On May 19, 2004, following a motion by Privratsky, the trial court transferred custody of the two children to her.  The court ordered Hewson to pay $1,146 a month in child support and terminated Privratsky's child support obligation.  

[¶5] On August 26, 2004, Privratsky moved for a clarification of the February 3, 2004, order.  An amended motion was filed on September 30, 2004.  A hearing was held on November 30, 2004.  The trial court, in its January 27, 2005, order found that Privratsky had paid $12,852 in child support to Hewson since 1991.  The Court then stated:

I have a strong feeling that after land valuation, credits and debits, due consideration for what everyone should and could have paid and done, that the bottom of the tape would show that Leon owes Joselyn around $18,000.

. . . .

So from the disproportionate property division, Leon still owes Joselyn $17,852 which, by great co-incidence [sic], comes very close to the amount that Joselyn paid directly in child support plus about $5,000 in attorney's fees.  

On April 26, 2005, the trial court issued an amended order providing Hewson owed Privratsky $17,582 to correct the unequal asset distribution resulting from the 1991 divorce.  Hewson appeals.

[¶6] Hewson argues the trial court clearly erred by ordering him to pay Privratsky $17,852 and by failing to make specific findings of how it arrived at the $17,852 figure.  Privratsky argues that, although the trial court could have provided a more detailed explanation of its calculations, enough evidence exists to support the trial court's decision.

II

[¶7] It is unclear whether the trial court's amended judgment only modifies the parties’ child support obligation or if it attempts to reopen the parties’ 1991 property settlement.  It has long been the law in this state that a trial court "does not have continuing jurisdiction to modify a property distribution in a divorce judgment, but has continuing jurisdiction to modify child support." 
Rueckert v. Rueckert
, 499 N.W.2d 863, 867 (N.D. 1993) (citations omitted); 
see
 
Sinkler v. Sinkler
, 194 N.W. 817 (N.D. 1923); 
see also
 N.D.C.C. § 14-05-24(2) (“The court may redistribute property in a postjudgment proceeding if a party has failed to disclose property and debts as required by rules adopted by the supreme court or the party fails to comply with the terms of a court order distributing property and debts.”).  We therefore conclude the trial court's amended judgment modifies only the parties’ child support obligations.

[¶8] We review the interpretation of a divorce judgment as a question of law fully reviewable on appeal.  
Boumont v. Boumont
, 2005 ND 20, ¶ 5, 691 N.W.2d 278.  "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review."  
Lauer v. Lauer
, 2000 ND 82, ¶ 3, 609 N.W.2d 450.  "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made."  
Id.
 

[¶9] Our  legislature has codified a strong public policy in favor of ensuring minor children receive adequate support and maintenance from their parents.  
Tiokasin v. Haas
, 370 N.W.2d 559, 562 (N.D. 1985).  Agreements between parents as to the support and maintenance of a child shall only be accepted by a trial court if they are in the child's best interest.  
Id.
  We held in 
Rueckert
, that an agreement between parents purporting to prohibit or limit the power of a court to modify future child support violates public policy and is invalid.  499 N.W.2d at 868.

[¶10]  Nevertheless, in 
Rueckert
, our Court recognized that, as a matter of equity, a divorcing parent attempting to satisfy her child support obligation by foregoing a rightful share of the marital property is entitled to offset the amount of marital property given up against her child support obligation.  
Id.
 at 870-71.  Under this equitable-offset remedy, a trial court must evaluate the obligor's interest in the marital property relinquished in lieu of payment of child support, calculate the amount of child support that would have been correct from the original decree to the date of the latest motion to modify, compute the obligor's child support obligation since the date of that motion under the guidelines, and offset the value of the obligor's marital property waived.  
Reimer v. Reimer
, 502 N.W.2d 231, 233-34 (N.D. 1993).  

[¶11] The equitable offset remedy under 
Rueckert
 should not be understood to supercede a child's right to support.  By its nature, the 
Rueckert
 remedy is only to be applied when it is "the most equitable means of granting the parties the benefit of their property settlement agreement, while at the same time recognizing the important public policy of placing on both parents responsibility for the adequate support and maintenance of their minor children.”  
Rueckert
, 499 N.W.2d at 871.  An agreement between parents purporting to waive entirely the child support obligation of one parent in lieu of marital property and limiting the power of the court to modify future child support should not be approved by a trial court.   However, in cases, like this, where such an agreement exists, forfeiture of marital property will only be considered "prepayment" of child support if equity demands and such a conclusion does not supercede the child’s right to support. 

[¶12] In this case, the parties’ agreement was accepted by the trial court and incorporated into the judgment in 1991, before our Court decided 
Rueckert
.   Further, custody of the children changed from Hewson to Privratsky on April 21, 2004.  Accordingly, the obligor is now Hewson.  Additionally, one of the children is no longer a minor and child support is no longer required for that child.  We conclude the trial court did not err in finding the 
Rueckert
 equitable-offset remedy is appropriate and will not adversely impact the children's right to support. 

[¶13] We further conclude the equitable-offset remedy gives Privratsky only a credit against her child support obligation in the amount of the forfeited marital property.  
See
 
Rueckert
, 499 N.W.2d at 870-71; 
Reimer
, 502 N.W.2d at 233-34.  Privratsky, who is benefitting from the 
Rueckert
 remedy, is not entitled to receive a payment of any remaining credit after her child support obligations have been paid.  To the extent the trial court intended to redistribute the marital property, it erred in interpreting the law.

[¶14] A remaining issue is whether the trial court erred in its finding that the amount of the equitable offset is $17,852.  "As a matter of law, the trial court must clearly set forth how it arrived at the amount of income and level of support."  
Dufner v. Dufner
, 2002 ND 47, ¶ 22, 640 N.W.2d 694.  Here, the trial court states only a "strong feeling" as to what the "bottom of the tape would show."  The trial court does not make a finding of the amount of child support owed by Privratsky to Hewson.   By not clearly setting forth how it determined the equitable-offset amount or the amount of forfeited marital property we cannot determine if Privratsky owes Hewson child support or is entitled to a future credit towards child support.  

[¶15] On remand, the trial court should apply the method of determining the equitable offset laid out in 
Rueckert
 and 
Reimer
.  
See
 
Rueckert
, 499 N.W.2d at 870; 
Reimer
, 502 N.W.2d at 233-34.  This requires that the trial court make specific findings of fact with regard to the evaluation of Privratsky's interest in the marital property she relinquished in lieu of her child support obligation under the original divorce stipulation.  The trial court must then calculate the amount of child support Privratsky would have owed from the time of the entry of the original divorce decree to the date of the first order establishing a child support obligation, the July 20, 1995, amendment to judgment.  In doing so, the trial court must utilize the evidence of Privratsky's gross income during that period and the guidelines in effect during that time.  Then, the trial court must calculate the amount of child support Privratsky owed from the July 20, 1995, amended judgment through July 2, 2003, the day before the Southwest Area Child Support Enforcement Unit's motion to increase support.  
Geinert v. Geinert
, 2002 ND 135, ¶ 10, 649 N.W.2d 237 (noting “a modification of child support generally should be made effective from the date of the motion to modify, absent good reason to set some other date.  The trial court retains discretion to set some later effective date, but its reasons for doing so should be apparent or explained.”).  As we recognized in 
Rueckert
, a trial court cannot retroactively modify accrued but unpaid child support; therefore, in calculating the amount of child support that should have been paid between July 20, 1995, and July 2, 2003, the trial court must use the $126 a month amount the trial court ordered in its July 20, 1995, judgment.  
See
 
Rueckert
, 499 N.W.2d at 870 n.4; 
see also
 
Steffes v. Steffes
, 1997 ND 49, ¶ 14, 560 N.W.2d 888; N.D.C.C. § 14-08.1-05.  The trial court must then calculate the amount of child support owed under the guidelines from July 2, 2003, through April 20, 2004, the day before custody of the children changed from Hewson to Privratsky.  Again, this calculation must utilize the evidence of Privratsky's gross income during that period and the guidelines in effect during that time.  After determining the total amount of child support owed, the trial court must make a finding of the amount of child support paid by Privratsky, and subtract that amount from the total owed.  This amount of child support owed but unpaid must then be offset by the value of the marital property relinquished.  

[¶16] Because custody of the children changed, if a credit remains in favor of Privratsky, this amount can be considered only as a possible credit toward child support owed to Hewson should custody again change hands.  It is not an amount owed to Privratsky by Hewson. 

III

[¶17] We reverse and remand for further proceedings consistent with this opinion.

[¶18] Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Daniel J. Crothers

Gerald W. VandeWalle, C.J.